EDWARDS, Judge.
The defendants, International Grain Transfer, Inc., its worker’s compensation insurer, now liquidated, Rockwood Insurance Company, and Louisiana Insurance Guaranty Association (LIGA) appeal a trial court judgment which granted the plaintiffs motion to reinstate worker’s compensation benefits. At issue are (1) whether LIGA is entitled to a credit on future benefits owed, in the amount of $32,184, as a result of overpay-ments erroneously made to the plaintiff by Rockwood; and (2) whether LIGA is entitled to offset the plaintiffs benefits pursuant to LSA-R.S. 23:1225 (as a result of plaintiffs receipt of Social Security benefits) and if so, the nature and extent of such offset.
Background Facts
The facts of this case are not in dispute. In May, 1980, the plaintiff suffered a heart attack which was later determined to be work related. By way of judgment dated January 4, 1984, plaintiff was rendered permanently and totally disabled, and Rockwood was ordered to pay $149 per week in worker’s compensation benefits. In January, 1985, as a result of a technical computer error, Rockwood began paying the plaintiff $298 per week, and continued to pay this amount through March 7, 1989. In February, 1990, Rockwood filed a Reconventional Demand for Declaratory Judgment seeking a credit for the overpayments as well as an offset for the social security benefits which plaintiffs applied for and obtained as a result of the judicial determination of his disability. Subsequently, Rockwood entered liquidation and LIGA took over its claims as the insurer. In August, 1991, LIGA summarily terminated the plaintiff’s benefits, based on its contention that it is entitled to a credit for the overpayments made by Rockwood. In May, 1991, LIGA filed a motion for summary judgment which was denied.[1] In February, 1992, plaintiff filed a motion to reinstate benefits. A hearing was held and the trial court rendered judgment on April 16,1992, reinstating plaintiffs benefits retroactive to the January, 1984 judgment, and ordering an offset for the social security benefits in the amount of $1.15 per week.
Applicability of LSA-R.S. 23:1206
Both, appellants and appellee, argue that the application of LSA-R.S. 23:1206, as it read in 1980[2] when this incident occurred, *899 to the facts of this case would yield a result in their favor, respectively. Naturally, then-interpretations of the statute and the jurisprudence differ. However, we find this statute and the cases interpreting it inapplicable to the facts of this case, thus we need not determine which interpretation urged is proper. This statute provides for deductions from benefits for “voluntary” payments made by an employer or insurer, when such payments “were not due and payable when made.” This statute is designed to reimburse an employer (or insurer) who makes voluntary payments, overpayments or wages equal to or exceeding the amount of compensation after an accident, prior to a judicial determination of disability. Worker’s compensation law does not contemplate the payment of wages in addition to payment of compensation benefits, see Moore v. Travelers Insurance Company, 79 So.2d 507, 510 (La.App. 2nd Cir.1955), and the aim of this statute is to remedy such an occurrence. The payments made to the plaintiff by Rock-wood were not “voluntary payments” within the contemplation of the statute; they were made pursuant to a judicial order. The fact that a technical error caused the payments to be made in excess of that ordered does not bring such payments within the scope of this statute.
Unjust Enrichment
The issue is more properly resolved by application of LSA-C.C. art. 2301. This statute provides:
He who receives what is not due to him, whether he receives it through error or knowingly, obliges himself to restore it to him from whom he has unduly received it.
LSA-C.C. art. 2302 further provides that “[h]e who has paid through mistake, believing himself a debtor, may reclaim what he has paid.” A cause of action is stated in unjust enrichment when there is an enhancement of one estate at the expense of another estate, without cause recognized by law, and for which no other remedy is readily apparent and available. Minyard v. Curtis Products, Inc., 251 La. 624, 205 So.2d 422, 432 (1967). Unjust enrichment was found to exist when a judgment debtor erred in calculating the amount of judicial interest and paid in excess of $100,000 of the amount actually due pursuant to the judgment. In that case, the fourth circuit reversed a trial court judgment and found that the debtor had stated a cause of action for restitution from the creditor’s attorneys, who were named as co-payees, and deemed to be “recipients of the payment of a thing not due.” New Orleans Public Service, Inc. v. Vanzant, 580 So.2d 533, 536 (La.App. 4th Cir.), writ denied, 584 So.2d 1168 (1991).
The record contains copies of the checks evidencing the overpayment. These checks, issued approximately every two weeks, in the amount of $596 each, were made jointly payable to Troy W. Shatoska and his attorney, Edward A. Shamis and mailed to Mr. Sham-is’s office. Shatoska does not dispute receiving these payments, nor does he argue that such payments were due when made. Based on the law and the record, we find that the appellants have adequately stated a cause of action of unjust enrichment, and are accordingly entitled to a credit for the $32,184 which was overpaid to the plaintiff and his attorney.
Offset for Social Security Benefits
Following the judgment which rendered him totally and permanently disabled, the plaintiff applied for and obtained social security benefits. LSA-R.S. 23:1225(A) provides:
The benefits provided for in this Subpart for injuries producing permanent total disability shall be reduced when the person receiving benefits under this Chapter is entitled to and receiving benefits under 42 U.S.C. Chapter 7, Subchapter II, entitled Federal Old Age, Survivors, and Disability Insurance Benefits, on the basis of the wages and self-employment income of an individual entitled to and receiving benefits under 42 U.S.C. § 423; provided that this *900 reduction shall be made only to the extent that the amount of the combined federal and worker’s compensation benefits would otherwise cause or result in a reduction of the benefits payable under the Federal Old Age, Survivors, and Disability Insurance Act pursuant to 42 U.S.C. § 424a, and in no event will the benefits provided in this Subpart, together with those provided under the federal law, exceed those that would have been payable had the benefits provided under the federal law been subject to reduction under 42 U.S.C. § 424a. However, there shall be no reduction in benefits provided under this Section for the cost-of-living increases granted under the federal law after the date of employee’s injury.
Pursuant to this statute, a reduction in compensation shall be made only to the extent that the combined Federal and Worker’s Compensation benefits exceed those that would have been payable under the federal law guidelines. Cross v. Travelers Insurance Company, 619 So.2d 610, 616 (La.App. 2nd Cir.1993).
On February 20, 1990, Rockwood filed a Reconventional Demand for Declaratory Judgment in which it asserted its entitlement to an offset for the Social Security benefits received by the plaintiff. In that pleading, Rockwood stated that based on information supplied by the Social Security Administration, plaintiffs average current earnings were $944.80 and his total family benefits were $687.80. Prior to a hearing on the above demand, Rockwood and International Grain filed a motion for summary judgment, on May 29, 1991, to which was attached an affidavit sworn out by Joel B. Peters, branch manager of the Department of Health and Human Resources, Social Security Administration Office. This affidavit reflected that plaintiffs average current earnings were $1,181.00; 80% of his average current earnings was $944.80; and his total family benefits, before offset, from December 1990 through May 1991 were $858.70. The affidavit further stated that the Social Security Administration had approved worker’s compensation offset to plaintiffs social security benefits at a rate of $379.60 per month from August, 1985 to the present (May, 1991). In a memorandum filed in support of summary judgment, the defendants asserted that based on the figures provided by the affidavit, they are entitled to an offset, and that the future worker’s compensation benefits due the plaintiff after offset would be $59.30. In response, plaintiff filed a memorandum in opposition to the motion for summary judgment claiming that the calculations for offset submitted by the defendants were in error. Attached to this memorandum was a letter from the Social Security Administration, dated August 2, 1991, which reflects that plaintiff received benefits at a rate different than those submitted by defendants.
Defendants then filed a supplemental memorandum to which they attached the deposition of Joel B. Peters, which was taken on October 29,1991, for the purpose of establishing the correct amount of the offset. Based on information provided in the deposition, defendants asserted: (1) the amount of benefits used in the calculation refer to amounts received on the date of entitlement, which for Shatoska was August, 1985; (2) at the date of entitlement, Shatoska’s total family benefit was $687.80 per month; (3) at the date of entitlement, Shatoska’s average current earnings was $1,181.00 per month; (4) 80% of the average current earnings is $944.80; (5) Shatoska’s monthly worker’s compensation benefits were $645.67; (6) based on these numbers the monthly offset should be $388.67, or $89.69 per week, retroactive to the date of judicial demand, February 20, 1990.
In response, the plaintiff filed a supplemental memorandum in opposition and again asserted that the offset claimed by the defendants was incorrectly calculated. Essentially, plaintiffs calculations differ from those submitted by the defendants based on the figure used for total monthly benefit; plaintiff submitted the amount presently received by Shatoska, $449.00 per month, rather than the $687.80 per month received at the date of entitlement, as submitted by the defendants. According to plaintiff, then, the total weekly offset to which LIGA would be entitled is $1.15, instead of $89.69.
*901 Based on this disagreement between the parties, the trial court denied the motion for summary judgment, finding that the correct figure to use in the calculation was a genuine issue of material fact.[3] Subsequently, the plaintiff filed a motion to reinstate benefits, and at a hearing held on March 9, 1992, the issue of overpayment and the issue of the offset were heard. The only additional evidence offered with regard to the offset issue was the testimony of Mr. Shatoska that he was currently receiving social security benefits in the amount of $449.00 per month. At the close of this hearing, the trial court granted reinstatement of benefits, together with an offset “based on the calculation determined by [plaintiffs] supplemental memorandum.” (No further reasons for judgment were given.) Accordingly, a judgment was rendered ordering a social security offset in the amount of $1.16 per week, retroactive to the date of judicial demand for the offset.
We find that the trial court erred in setting the offset at $1.15 per week. By affidavit and deposition, Joel B. Peters, branch manager of the Social Security Administration Office provided the correct figures to be used in the calculation, as set forth in Lofton v. Louisiana Pacific Corporation, 423 So.2d 1255 (La.App. 3rd Cir.1982). Peters’ testimony was uncontroverted. Therefore, based on the figures submitted by Peters, and the formula set out in Lofton, supra, 423 So.2d at 1259, we calculate the offset as follows:
(a) Total Family Benefits.$ 687.80
(b) Average Current Earnings.$1,181.00
(c) 80% of Average Current Earnings.$ 944.80
(d) Total monthly payment (effective Aug. 1985) including worker’s compensation and total family benefit cannot exceed.$ 944.80
(e) Maximum payment due monthly from worker’s compensation without being subject to reduction (d-a).$ 257.00
(f) Converted to weekly payments $257.00 x 3 divided by 13.$ 59.31
(g) Weekly offset by worker’s compensation $149.00 - $59.31.$ 89.69
See also Carter v. Continental Assurance Co., 554 So.2d 688, 691 (La.App. 3rd Cir.1989). Therefore, LIGA is entitled to an offset in the amount of $89.69 per week, pursuant to LSA-R.S. 23:1225.
For the foregoing reasons, the judgment of the trial court ordering a reinstatement of benefits and an offset in the amount of $1.15 per week is reversed; LIGA is hereby entitled to a credit on future worker’s compensation benefits owed in the total amount of $32,184, as well as a weekly offset in the amount of $89.69 for social security benefits received by Shatoska. Plaintiff is assessed all costs of this appeal.
REVERSED AND RENDERED.

. The denial of this motion for summary judgment is the subject of an application for supervisory writs which is also before this court; a decision on that application is being rendered this same date. (See 93 CW 1410).

. In 1980, the statute provided:
Any voluntary payments made by the employer or his insurer either in money or otherwise, to the injured employee or his dependents, and accepted by the employee, which, by the terms of this act, were not due and payable when made, may, subject to the approval of the court, be deducted from the payments to be made as compensation; provided, that in case of disability, such deduction shall be made by shortening the period during which compensation shall be paid, and not by reducing the amount of the periodical payments.
*899 LSA-R.S. 23:1206 was subsequently amended La.Acts 1983, 1st Ex.Sess., No. 1, § 1, effective July 1, 1983. The amendment added "or unearned wages" to voluntary payments, and deleted the final proviso which specified that the credit had to be taken by shortening the time period of benefits rather than reducing the amount of periodic payments.

. See footnote 1.